IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


GLORIA MIDDLETON; BEVERLY K. RUSHING;
and RETHA SNEED; Individually
and on Behalf of a Class of all
Others Persons Similarly Situated                    PLAINTIFFS


VS.                          CIVIL ACTION NO. 3:06-cv-303-WHB-LRA


ROBERT C. ARLEDGE; MICHAEL T. GALLAGHER;
GALLAGHER, YOUNG, LEWIS, HAMPTON & DOWNEY, L.L.P.;
RICHARD SCHWARTZ; and SCHWARTZ & ASSOCIATES, P.A.     DEFENDANTS


CONSOLIDATED WITH


GEORGE BUSHARDT and SHARON LEE BUSCHARDT;
Individually and on Behalf of a Class
of all Others Persons Similarly Situated              PLAINTIFFS


VS.                          CIVIL ACTION NO. 3:07-cv-350-TSL-JCS


ROBERT C. ARLEDGE; MICHAEL T. GALLAGHER;
GALLAGHER, YOUNG, LEWIS, HAMPTON & DOWNEY, L.L.P.;
RICHARD SCHWARTZ; and SCHWARTZ & ASSOCIATES, P.A.     DEFENDANTS


OPINION AND ORDER

This cause is before the Court on Plaintiffs' Motions for

Class Certification.  The Court has considered the Motions,

Responses, Rebuttal, Surebuttals, attachments to the pleadings, as

well as supporting and opposing authorities and finds that the

Motions are not well taken and should be denied.

## I.  Factual Background and Procedural History

In 1997, the United States Food and Drug Administration issued a warning regarding a link between the use of certain prescription diet medications including fenfluramine, dexfenfluramine, phentermine, Redux, and/or Pondimin and the development of coronary valve disease.  Thereafter, a lawsuit styled Trina Washington v. American Home Products was filed in the Circuit Court of Jefferson County, Mississippi, on behalf of five individuals who had been prescribed one or more of the above referenced medications.  On December 21, 1999, after a jury awarded $150,000,000 to the Washington Plaintiffs, a settlement was reached with American Home Products ("Fen-Phen I Settlement").  The Fen-Phen I Settlement was referred to a Special Master who, on April 25, 2000, recommended the establishment of a Qualified Settlement Fund under which an appointed Fund Administrator would determine the amount of compensation to be paid to each Claimant.[1]  The Circuit Court of Jefferson County approved the recommendations of the Special Master on May 23, 2000.  The claims of approximately 1,500 Claimants, who resided in 34 different states, were settled through the Fen-Phen I Settlement.

At some point, American Home Products ("AHP") also agreed to settle a lawsuit styled Mary Helen Danzler v. American Home

---

[1]  The term "Claimant" denotes individuals who settled claims through either the Fen-Phen I or II Settlements.

2

Products, which was then pending in the Circuit Court of Jasper County, Mississippi ("Fen-Phen II Settlement"). The Fen-Phen II Settlement was administered in a proceeding styled In the Matter of the Disbursement of Funds in the Fen-Phen Litigation, which was filed in the Chancery Court of the First Judicial District of Hinds County, Mississippi. As with the Fen-Phen I Settlement, the Fen-Phen II Settlement was referred to a Special Master who, on December 20, 2000, recommended the establishment of a Qualified Settlement Fund. On December 21, 2000, Chancellor Stuart Robinson approved the creation of a Qualified Settlement Fund and appointed a Claims Administrator who was to, inter alia, develop a claim administration system for the purpose of determining the amount of compensation to be paid to each Claimant. The claims of approximately 4,700 Claimants, who resided in 39 different states, were settled through the Fen-Phen II Settlement.

As understood by the Court, the Fen-Phen I and II Settlements were conducted in two phases, a "use phase" and a "damages phase." The first phase consisted of determining whether an individual was eligible to participate in either Settlement. According to the record, attorneys from around the country referred clients to Defendants Michael T. Gallagher and the law firm of Gallagher, Young, Lewis, Hampton & Downey, L.L.P. ("Gallagher Defendants"), who were acting as lead counsel for the Fen-Phen I and II

Settlements, in order to have their claims settled.[2]  Defendants Richard Schwartz and Schwartz & Associates, P.A. ("Schwartz Defendants"), and Robert Arledge ("Arledge") referred clients to the Gallagher Defendants for settlement purposes.

As lead counsel, the Gallagher Defendants collected information from the referring attorneys regarding each potential Claimant's use of the subject medications, reviewed the information, and forwarded it to AHP.  Based on the information received, AHP either approved or rejected the potential Claimant. It is undisputed that some Claimants did not provide any medical records to verify their use of the subject medications.  It is also undisputed that some of the claims that were submitted in the Fen-Phen I and II Settlements were fraudulent.

After the Claimants were approved, the Gallagher Defendants negotiated a settlement with AHP, whereby the latter paid a lump sum of $399,000,000 to settle the claims of all approved Claimants in the Fen-Phen I Settlement, and a lump sum of $385,000,000 to settle the claims of all approved Claimants in the Fen-Phen II Settlement.  A portion of each lump sum payment was then deposited into the respective Fen-Phen I and II Qualified Settlement Funds. Thereafter, the Settlements entered into the "damages phase."

---

[2]  In addition to acting as lead counsel, the Gallagher Defendants were the referring attorneys for twenty Claimants who participated in the Fen-Phen I Settlement, and four Claimants who participated in the Fen-Phen II Settlements.

During the damages phase of each Settlement, James P. Cothren ("Cothren"), who had been designated as the Special Master and Claims/Fund Administrator for both the Fen-Phen I and II Settlements, did not undertake an independent review of each Claimant's use of the subject medications but, instead, relied on the findings made by AHP during the use phase. To determine the amount of compensation to be paid to each Claimant, Cothren created a "Matrix", which classified certain categories of medication-related diagnoses based on their severity. Cothren, assisted by two cardiologists, then reviewed the Claimant's echocardiograms and medical records, if available, and placed each Claimant into one of the categories identified in the Matrix based on his or her diagnoses. Thus, under the Matrix, a Claimant who had been diagnosed with a more severe injury or who had more than one medication-related diagnosis, received more compensation than a Claimant who did not sustain any injury related to the use of the subject medications.

In determining the amount of compensation to be awarded, Cothren also considered the residency of each Claimant. Thus, Claimants residing in Jefferson County, Mississippi, and Holmes County, Mississippi, received more compensation for claims that were identical to those of Claimants from other counties in Mississippi. Likewise, Mississippi Claimants received more compensation for claims that were identical to those of Claimants from other states.

After determining the amount of compensation a Claimant was to receive based on their Matrix category and residency, Cothren prepared a "Distribution Sheet" for each Claimant. The Distribution Sheet contained information regarding the gross amount of compensation awarded to the Claimant, the amount of attorneys' fees and expenses to be deducted, and the net amount the Claimant was to receive in settlement. Cothren then forwarded each Claimant's Distribution Sheet, settlement check, and a "Release and Acknowledgment" to the attorney who had originally referred that Claimant to the Gallagher Defendants. The referring attorney was then required to meet with the Claimant, deliver the settlement check, and have the Claimant execute the required release and settlement documents. Once executed, the releases were forwarded to the Gallagher Defendants, who, in turn, returned them to Cothren.

**Middleton Action**

On June 5, 2006, three plaintiffs filed a Class Action Complaint against the Gallagher Defendants, Richard Schwartz, and Arledge, seeking to represent a class comprised of:

> All persons who settled legitimate diet drug cases through either of the Diet Drug Qualified Settlement Funds established and administered under the authority of the Circuit Court of Jefferson County, Mississippi via case number 99-0035 and styled Trina Washington, et al v. American Home Products, et al. [or] in the Chancery Court of the First Judicial District of Hinds County, Mississippi, In the Matter of the Disbursement of Funds [in] the Fen-Phen Litigation, Cause No. G2000-2279.

6

The case was docketed as Civil Action No. 3:06-cv-303, and was assigned to the undersigned judge.   In the complaint, the plaintiffs alleged that the named defendants had committed multiple wrongful acts while providing legal representation to them and other Fen-Phen I and Fen-Phen II Claimants including: (1) failing to assess individual claims, (2) giving improper and incomplete advice to claimants to obtain their acceptance of the Settlements, (3) charging unconscionable attorneys' fees, (4) improperly submitting invalid claims to the Fund/Claims Administrator, (5) failing to establish policies to prevent or significantly diminish the probability that fraudulent claims would be made, and (6) failing to detect fraudulent claims that were made.   Based on these allegations, the plaintiffs sought damages including the forfeiture of all attorneys' fees and costs received by the named defendants through the Fen-Phen I and Fen-Phen II Settlements through claims of negligence and malpractice, breach of fiduciary duties, and unjust enrichment.   On November 29, 2006, a First Amended and Supplemental Class Action Complaint was filed naming three additional plaintiffs, and the law firm of Schwartz and Associates, P.A., as an additional defendant.

On September 25, 2007, with leave of the Court, Plaintiffs Gloria Middleton, Retha Sneed, and Beverly Rushing ("Middleton Plaintiffs"), filed a Second Amended and Supplemental Class Action

Complaint[3] against the Gallagher Defendants, the Schwartz Defendants, and Arledge. ("Middleton Action"). In this action, the Middleton Plaintiffs seek to certify a class comprised of:

> All persons who settled legitimate diet drug cases through the Diet Drug Qualified Settlement Fund established and administered under the authority of the Circuit Court of Jefferson County, Mississippi via case number 99-0035 and styled Trina Washington, et al v. American Home Products, et al.

Middleton Compl., at ¶ 18. The Middletown Complaint, like its predecessors, alleges claims of (1) breach of fiduciary duties, (2) negligence and malpractice, and (3) unjust enrichment, arising from certain wrongful acts allegedly committed by the defendants while providing legal representation to Claimants who participated only in the Fen-Phen I Settlement. In support of their claim of breach of fiduciary duties, the Middleton Plaintiffs allege that the defendants:

> a.   paid Greg warren, a lay intermediary, to solicit clients to participate in a prospective settlement involving American Home Products and the use of diet drugs referred to as "fen-phen";
>
> b.   failed to fully assess individual claims, obtain medical records, and forward medical records to prove use of the drugs at issue;
>
> c.   failed to fairly and fully communicate settlement offers made and accepted without prior approval;
>
> d.   entered into aggregate settlements for all the Plaintiffs' and members of the class's claims without obtaining prior consent;

---

[3]   The Second Amended and Supplemental Class Action Complaint filed in Civil Action No. 3:06-cv-303 will be referred to as the "Middleton Complaint."

8

e.   induced their clients to execute a Release and
Acknowledgment that the initial payment was in
"full and final payment of the settlement of my
(their) case" when additional payment from
"reserves in the settlement" was owing;

f.   charged and obtained unconscionable attorneys fees
and improperly calculated and obtained
reimbursement for expenses;

g.   improperly placed before the Special Master claims
that the Defendants and Defendants' agents and
employees knew or should have known were fraudulent
claims;

h.   failed to advise their clients in the qualified
settlement fund in the amount of $305,000,000 the
terms and conditions relating to the settlement and
distribution of the remaining $94,000,000 of the
$399,000,000 aggregate settlement agreed to on
December 21, 1999;

i.   failed to seek reimbursement for in excess of
$4,000,000 of fraudulent claims paid to claimants
and their attorneys out of the <u>Trina
Washington/Diet Drugs I Settlement Fund</u>;

j.   agreed to an allocation of $35,000,000 out of the
December 21, 1999, $399,000,000 aggregate
settlement to settle certain cases pending in
Holmes County without conducting a reasonable
inquiry in connection with the number of Holmes
County plaintiffs who allegedly took the diet
drugs;

k.   created and/or forwarded to plaintiffs and members
of the class a "Client Settlement Disclosure
Statement" that is replete with inadequacies and
fails to disclose relevant facts;

l.   failed to pay for and have all clients have an
echocardiogram;

m.   failed to advise that participants in the
settlement the method by which the costs were to be
apportioned to each client;

n.   improperly allocated expenses to clients on a per
capita rather than a pro-rata basis;

9

o.   improperly failed to disclose the total fees and
costs to be paid to the attorneys as a result of
the aggregate settlement; and

p.   any and all other acts and inactions that may be
proved at trial to constitute breach of fiduciary
duty.

Id., at ¶ 13.   In support of their claim of negligence and
malpractice, the Middleton Plaintiffs allege that the defendants
failed to:

a.   conduct background investigation of their agents
and/or employees;

b.   establish effective policies, practices, and
procedures that would have prevented and/or
significantly diminished the probability that
illegal solicitation and submission of fraudulent
claims would take place;

c.   establish effective auditing practices that would
have detected fraudulent claims;

d.   properly investigate, develop, and prosecute the
claims of their clients; and

e.   remit and/or timely remit payments to their clients
from "reserves in the settlements."

Id., at ¶ 14.   The Middleton Plaintiffs' claim of unjust enrichment
is supported by the same allegations offered in support of their
breach of fiduciary duties and negligence and malpractice claims.
Id. at ¶ 16.   Through their complaint, the Middleton Plaintiffs
seek damages including the "forfeiture of all attorneys' fees
received and reimbursed expenses and costs in conjunction with the
[Fen-phen I Settlement] by Defendants."   Id. at ¶ 12.

10

**Buschardt Action**

On June 19, 2007, Plaintiffs George and Sharon Lee Buschardt ("Buschardt Plaintiffs") filed a Class Action Complaint in this Court against the Gallagher Defendants, the Schwartz Defendants, and Arledge. ("Buschardt Action"). Through their complaint, the Buschardt Plaintiffs seek to certify a class comprised of:

> All persons who settled legitimate diet drug cases through the Diet Drugs II Qualified Settlement Fund established and administered under the authority of the Chancery Court of the First Judicial District of Hinds County, Mississippi under the cause number G2000-2279, and styled In the matter of the Disbursement of Funds in the Fen-Phen Litigation.

See Buschardt Complaint, at ¶ 18.  This case was docketed as Civil Action No. 3:07-cv-350, and was assigned to United States District Judge Tom S. Lee.  As in the Middleton Action, the Buschardt Plaintiffs allege claims of (1) breach of fiduciary duties, (2) negligence and malpractice, and (3) unjust enrichment, arising from certain wrongful acts allegedly committed by the defendants while providing legal representation to Claimants who participated in the Fen-Phen II Settlement.  In support of their claim of breach of fiduciary duties, the Buschardt Plaintiffs allege that Defendants:

> a.   paid Greg Warren, a lay intermediary, to solicit clients to participate in a prospective settlement involving American Home Products and the use of diet drugs referred to as "fen-phen";
>
> b.   failed to fully assess individual claims, obtain medical records, and forward medical records to prove use of the drugs at issue;

      c.     induced their clients to execute a Release and Acknowledgment that the initial payment was in "full and final payment of the settlement of my (their) case" when additional payment from "reserves in the settlement" was owing;

      d.     charged and obtained unconscionable attorneys fees and improperly calculated and obtained reimbursement for expenses;

      e.     improperly placed before the Special Master claims that the Defendants and/or Defendants' agents and employees knew or should have known were fraudulent claims;

      f.     failed to seek reimbursement for in excess of $2,000,000 of fraudulent claims paid to claimants and their attorneys out of the Diet Drugs II Settlement Fund;

      g.     failed to advise the participants in the settlement the method by which the costs were to be apportioned to each client;

      h.     improperly allocated expenses to clients on a per capita rather than a pro-rata basis;

      i.     improperly failed to disclose the total fees and costs to be paid to the attorneys as a result of the aggregate settlement; and

      j.     failed to timely pursue the distribution of approximately $10 million (Ten Million and no/100 Dollars) remaining in the Diet Drugs II Settlement Fund; and

      k.     any and all other acts and inactions that may be proved at trial to constitute breach of fiduciary duty.

Buschardt Compl., at ¶ 13.  In support of their claim of negligence and malpractice, the Buschardt Plaintiffs allege that Defendants failed to:

      a.     conduct background investigation of their agents and/or employees;

    b.    establish effective policies, practices, and procedures that would have prevented and/or significantly diminished the probability that illegal solicitation and submission of fraudulent claims would take place;

    c.    establish effective auditing practices that would have detected fraudulent claims;

    d.    properly investigate, develop, and prosecute the claims of their clients; and

    e.    remit and/or timely remit payments to their clients from "reserves in the settlements."

Buschardt Compl., at ¶ 14.  The Buschardt Plaintiffs' claim of unjust enrichment is supported by the same allegations offered in of their breach of fiduciary duties and negligence and malpractice claims.  Id. at ¶ 16.  Through their claims, the Buschardt Plaintiffs seek damages including the "forfeiture of all attorneys' fees received and reimbursed expenses and costs in conjunction with the [Fen-phen I Settlement] by Defendants."  Id. at ¶ 12.

On September 26, 2007, the Middleton Action and the Buschardt Action were consolidated for all purposes except trial.  The Middleton Plaintiffs and the Buschardt Plaintiffs have now moved for class certification in their respective lawsuits.

## II.  Legal Analysis

### A.  Jurisdiction

Federal jurisdiction over the Middleton and Buschardt Actions is predicated on 28 U.S.C. § 1332(d), which provides:

13

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which –
>
> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant

28 U.S.C. § 1332(d)(2)(A).

In the Middleton Action, the named Middleton Plaintiffs are Mississippi citizens, and the Gallagher Defendants are considered citizens of Texas for the purpose of diversity analysis.  In the Buschardt Action, the named Buschardt Plaintiffs are citizens of Texas, and the Schwartz Defendants and Arledge are considered citizens of Mississippi.  It is undisputed that both the Middleton Plaintiffs and the Buschardt Plaintiffs seek greater than $5,000,000 in damages through their respective class action complaints.  Accordingly, the Court finds it may properly exercise subjected matter jurisdiction over both the Middleton Action and Buschardt Action pursuant to 28 U.S.C. § 1332(d)(2)(A).

The Schwartz Defendants request that the Court abstain from exercising jurisdiction over the Middleton Action under 28 U.S.C. § 1332(d)(3), which provides:

> A district court may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction under paragraph (2) over a class action in which greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed based on consideration of –

(A) whether the claims asserted involve matters of national or interstate interest;

(B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States;

(C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction;

(D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants;

(E) whether the number of citizens of the State in which the action was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and

(F) whether, during the 3-year period preceding the filing of that class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

In support of their request, the Schwartz Defendants have presented evidence to show that more than one-third of the Fen-Phen I Settlement Claimants, but less than two-thirds of those Claimants, resided in Mississippi. See Resp. of Schwartz Defs. to Middleton Pls.' Mot. for Class Certification, Ex. B (Fugate Affidavit) at ¶ 6. The Schwartz Defendants, however, have not shown that the primary defendants in the Middleton Action are likewise citizens of Mississippi as the Gallagher Defendants are clearly citizens of the State of Texas for the purpose of diversity analysis. Accordingly, the Court finds that the Schwartz Defendants have failed to show that discretionary abstention under 28 U.S.C. § 1332(d)(3) is warranted in the Middleton Action.

**B.   Class Action Consideration**

**1.   Standard for Class Action Certification**

It is well settled that the plaintiff bears the burden of demonstrating that a lawsuit should proceed as a class action. See, e.g., Berger v. Compaq Computer Corp., 257 F.3d 475, 479 (5th Cir. 2001); Alabama v. Blue Bird Body, Co., 573 F.2d 309, 315 (5th Cir. 1978).   When determining whether to certify a class action, the court must undertake a "rigorous analysis" to ensure that the putative class and its proposed representative satisfy each of the prerequisites of class certification.   See Unger v. Amedisys Inc., 401 F.3d 316, 320-21 (citing General Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982)).   To proceed as a class action under Rule 23 of the Federal Rule of Civil Procedure, the plaintiff seeking to "sue as a representative party on behalf of all class members" must demonstrate that: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class."   Fed. R. Civ. P. 23(a).   The plaintiff must also show that the putative class action fits within one of the categories described in Rule 23(b).   See Horton v. Goose Creek Index. Sch. Dist., 690 F.2d 470, 483 (5th Cir. 1982).   In the cases *sub judice*, the Middleton Plaintiffs and

the Buschardt Plaintiffs seek class certification under Rule 23(b)(3), which is permitted only if the court finds that "questions of law or fact common to the members of the class predominate over any questions affecting individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." FED. R. CIV. P. 23(b)(3).

In addition to satisfying the prerequisites enumerated in Rule 23, courts have recognized two additional factors that must be satisfied before class certification may be granted. See e.g. McGuire v. International Paper Co., Civil Action No. 1:92-cv-593, 1994 WL 261360, at *3 (S.D. Miss. Feb. 18, 1994). First, "in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." DeBrekmaeker v. Short, 433 F.2d 733, 734 (5th Cir. 1970). "This requires that the class be defined 'in objective terms that are capable of present ascertainment.'" McGuire, 1994 WL 261360, at *3 (quoting MANUAL FOR COMPLEX LITIGATION 2D § 30.14, at 213 (1985)). See also Gustafson v. Polk County, Wis, 226 F.R.D. 601, 607 (W.D. Wis. 2005) (finding that an implied requirement for class certification under Rule 23 is that the definition of the proposed class must be precise, objective, and presently ascertainable); Mike v. Safeco Ins. Co. of Am., 223 F.R.D. 50, 52-53 (D. Conn. 2004) (finding that class certification under Rule 23 is not proper unless the description of

the class is sufficiently definite so as to render it administratively feasible for the court to determine membership of the proposed class). Second, the party seeking to act in a representative capacity under Rule 23 must be a member of the proposed class. See McGuire, 1994 WL 261360, at *3 (citing Wagner v. Central La. Elec. Co., Inc., 99 F.R.D. 279, 281 (E.D. La. 1983)). See also Bentley v. Honeywell Int'l, Inc., 223 F.R.D. 471, 477 (S.D. Ohio 2004) (finding that "[b]efore delving into the 'rigorous analysis' required by Rule 23, a court first should consider whether a precisely defined class exists and whether the named plaintiffs are members of the proposed class.").

## 2.  Adequacy of the Class Definitions

In the Middleton Action, the plaintiffs seek to certify a class comprised of:

> All persons who settled legitimate diet drug cases through the Diet Drug Qualified Settlement Fund established and administered under the authority of the Circuit Court of Jefferson County, Mississippi via case number 99-0035 and styled Trina Washington, et al v. American Home Products, et al.

Middleton Compl., at ¶ 18.  The putative class would be comprised of Claimants who participated in the Fen-Phen I Settlement.  The Buschardt Plaintiffs seek to certify a class comprised of:

> All persons who settled legitimate diet drug cases through the Diet Drugs II Qualified Settlement Fund established and administered under the authority of the Chancery Court of the First Judicial District of Hinds County, Mississippi under the cause number G2000-2279,

18

and styled <u>In the matter of the Disbursement of Funds in the Fen-Phen Litigation</u>.

<u>See</u> Buschardt Compl., at ¶ 18.   This putative class would be comprised of Claimants who participated in the Fen-Phen II Settlement.

The defendants challenge the definition of the proposed classes on the basis that an inquiry into the medical history of each potential class member would have to be made in order to determine whether he or she had a "legitimate diet drug case" that was settled through either the Fen-Phen I or II Settlements.  For example, the Gallagher Defendants argue:

> Plaintiffs would have this Court examine hundreds of medical records, pharmaceutical records, conduct discovery and hold evidentiary hearings solely to determine membership in the class.   Because each participant in the Fen-Phen I and Fen-Phen II Settlements submitted *some* proof of injury, use, or exposure, the parties or the court would be required to look behind the proof to determine if the case is "legitimate" or "fraudulent."
>
> Plaintiffs offer no objective approach as to how the Court should distinguish between the "good" cases and the "bad" ones, but it is clear that such an inquiry could conceivably require the parties to depose hundreds of physicians, pharmacists, claimants, claimants' family members, referring lawyers, and other potential witnesses to determine the validity of each claim for each member in the class.

<u>See</u> Resp. of Gallagher Defs. in Opp'n to Pls.' Mots. for Class Certification, at 16.

The plaintiffs, however, contend that an individual inquiry would not be required as "[t]he legitimacy of Plaintiffs' claims is

assumed, unless that individual has pled guilty to filing a false
claim."  Pls.' Consolidated Reply in Supp. of Mots. for Class
Certification, at 3.  In other words, the plaintiffs argue that as
long as a potential class member is not one of the approximately
twenty individuals who pleaded guilty to filing false claims, the
Court should assume that he or she had a "legitimate diet drug
case" that was settled in either the Fen-Phen I or II Settlements.
The Court finds this assumption untenable.  The record clearly
establishes that fraudulent claims were submitted by Claimants who
participated in both the Fen-Phen I and II Settlements.  There has
been no showing, however, that every Claimant who submitted a
fraudulent claim has since been apprehended and pleaded guilty to
that fraud.  As such, the Court cannot assume that a potential
class member has a legitimate diet drug case simply because he or
she has not yet admitted guilt.  To permit such an assumption would
raise a substantial risk of continuing the fraud that was
originally perpetuated in the Fen-Phen I and II Settlements as
potential class members who submitted fraudulent claims, but have
not yet been caught, would benefit twice from their deception.

The Court finds that the proposed class definitions in the
Middleton and Buschardt Actions are neither clearly nor presently
ascertainable.  As discussed above, there has been no showing that
every Claimant who submitted a fraudulent claim in the Fen-Phen I
or II Settlement has admitted guilt.  Thus, to determine class

20

membership in either Action, the Court would be required to independently review each claim that was submitted in the underlying Settlements to ensure that each class member's claim was not fraudulent.

Additionally, under the proposed class definitions, the Court would be required to review the merits of each claim settled in the Fen-Phen I and II Settlements to determine the viability of that claim. Again, the plaintiffs seek to certify classes comprised of "[a]ll persons who settled legitimate diet drug cases" in either the Fen-Phen I or II Settlements. The term "legitimate" is defined as "valid" and "that which is ... recognized by law" See BLACK'S LAW DICTIONARY 920 (8th ed. 2004), and BLACK'S LAW DICTIONARY 901 (6th ed. 1990), respectively. As such, a "legitimate diet drug case" would presumably be one that would be valid or recognized, i.e. could properly be maintained, under the law of the state in which it accrued.

To determine whether a potential class member settled a "legitimate diet drug case" would, therefore, require (1) ascertaining the requirements for maintaining a strict liability or negligence claim against a pharmaceutical manufacturer in each class member's home state, and (2) reviewing each class member's medical records, pharmaceutical records, or other evidence to determine whether he or she would have a recognized, viable claim under that law. The determination of class membership would be

further complicated because some of the claims settled in the Fen-Phen I Settlement were for loss of consortium.  <u>See</u> Middleton Pls.' Mot. for Class Certification, at n.3.   To determine whether a potential class member had settled a legitimate loss of consortium claim would require, in the opinion of the Court, some showing that (1) the class member's spouse had used one of the subject medication and was injured as a result of that use, and (2) that the class member had sustained a loss of consortium attributable to his or her spouse's medication-related injury.

The Court finds the administrative burden created by such reviews renders these cases inappropriate for class certification. <u>See</u>, <u>e.g.</u>, <u>Sanneman v. Chrysler Corp.</u>, 191 F.R.D. 441, 446 (E.D. Pa. 2000) (finding that class certification is inappropriate in cases in which "[d]etermining a membership in the class would essentially require a mini-hearing on the merits of each class member's case" because such "administrative burdens ... are incongruous with the efficiencies expected in a class action."). <u>See also</u> <u>Mike v. Safeco Ins. Co. of Am.</u>, 223 F.R.D 50, 53 (D. Conn. 2004) (finding that the proposed class, as defined, was "untenable because the court would have to conduct an individual inquiry regarding the merits of each proposed plaintiff's claim in order to determine class membership); <u>White v. Williams</u>, 208 F.R.D. 123, 129-30 (D.N.J. 2002) (finding that class certification was not proper because adoption of the proposed class definition "would

require the Court to conduct a number of mini-hearings or to employ some other screening mechanism prior to defining the class."); Wanstrath v. Time Warner Entm't, Co., L.P., No. 93 Civ. 8538, 1997 WL 122815, at *3 (S.D.N.Y. Mar. 17, 1997) (denying class certification because the proposed class would have required the court to conduct "a multitude of mini-trials" that would have been "tremendously time consuming and costly."). The Court additionally finds that as the proposed class members in the Middleton and Buschardt Actions could not be definitively identified without engaging in individualized fact-finding, the plaintiffs have failed to satisfy one of the basic requirements for class certification and, therefore, their Motions for Class Certification must be denied.

Assuming *arguendo*, that the proposed class definitions were adequate, Plaintiffs' Motions for Class Certification would nevertheless fail because they have not established that "the representative parties will fairly and adequately protect the interests of the class" as required under Rule 23(a)(4).[4]   As

_____

[4]   Additionally, without deciding the issue, it appears that the plaintiffs have failed to establish the requirements of Rule 23(b)(3).  The Court finds that individual issues regarding the class members' claims of negligence and malpractice, and breach of fiduciary duties, including (1) the nature and the content of the representations made to the class members in conjunction with the Fen-Phen I and II Settlements, (2) the nature and the scope of the investigations undertaken by the defendants before claims were submitted for settlement, and (3) whether each class member could invoke the discovery rule, would likely predominate over the common questions of fact of law in these cases.

explained in <u>Butterworth v. Quick & Reilly, Inc.</u>, 171 F.R.D. 319, 322-23 (M.D. Fla. 1997):

> Under Federal Rule of Civil Procedure, Rule 23(a)(4) the plaintiff must provide fair and adequate protection for the interests of the class.  The adequacy requirement is two fold: first "[p]laintiff must demonstrate that she will vigorously prosecute the action and [second] plaintiff must provide adequate financing and competent counsel." <u>Brooks v. Southern Bell Tel. & Tel. Co.</u>, 133 F.R.D. 54, 56 (S.D. Fla. 1990).  In addition, "the named plaintiff [must have] interests in common with, and not antagonistic to, the class members' interests; and plaintiff's attorneys are qualified, experienced, and generally able to conduct litigation." <u>Kirkpatrick v. J. C. Bradford & Co.</u>, 827 F.2d 718, 722-28 (11th Cir. 1987).
>
> However, if the named plaintiff's "participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case" then the class must not be certified. <u>Kirkpatrick</u>, 827 F.2d at 728.  In addition, a court should conduct an "inquiry into the knowledge of the representative ... to ensure that the party is not simply lending [her] name to a suit controlled entirely by the class attorney." <u>Id.</u>

<u>Id.</u> at 322-23 (alterations in original).

In the Middleton Action, the record suggests that the named plaintiffs lacked knowledge regarding their lawsuit at the time they were deposed, and that the lawsuit was being controlled entirely by the class attorney.  For example, during her deposition Retha Sneed was instructed to not answer questions regarding the claims alleged against the defendants, the facts upon which those claims were based, the damages that were being sought through the lawsuit, or the manner in which the damages should be allocated among the class members.  <u>See</u> Resp. of Arledge to Pls.' Mot. for Class Certification, at 6-8, and Ex. A (Sneed Dep.) at 29-31, 38, 42-44.

During the deposition of Gloria Middleton the following exchange occurred:

    Q.    ...What facts are you relying on in bringing a
          claim against these lawyers?

    A.    That I wasn't treated fair.

    Q.    And how do you contend that you were not treated
          fair?

    A.    I didn't get the amount of settlement that I should
          have.  That [sic] the way I feel.

    Q.    ...And what do you believe that the lawyers did or
          didn't do that caused you not to get the amount
          that you think you should have been entitled to?

    Plaintiffs' Counsel: Object to the form of the question.
    Calls for a legal conclusion, and I instruct the witness
    not to answer.   The claims are articulated in the
    complaint and the amended complaint, which she has read.

    Defense Counsel: I tell you what my basis is going to be.
    I think I've got a right to ask a class representative as
    to their understanding of their allegations of the
    complaint, and it goes to the adequacy of the plaintiff's
    representation as class plaintiffs.  So I think it's
    appropriate for a class deposition – deposition of a
    class representative as to their understanding of their
    allegations in their own lawsuit.

    Plaintiffs' Counsel: Well, if – I believe if we're going
    to ask her about the allegations of her lawsuit, she
    should have the opportunity to review her lawsuit before
    she's questioned on it, just like she'd have the right to
    review any document before she's questioned on the
    document.  So if you want to take a break and let's let
    her read the complaint and the amended complaint and then
    you ask her questions about it, then I would think it's
    appropriate.

See Id. at 9–10 and Ex. B (Middleton Dep.) at 39–40.  Thereafter,

Middleton was not permitted to answer questions regarding the facts

underlying her claims.  Likewise, Middleton was not permitted to

answer questions regarding class actions, including who would comprise the class she sought to represent.  Id. at 10-14 and Ex. B (Middleton Dep.) at 40-41, 45, 48-50, 52.  Finally, Middleton testified that she had sued Richard Schwartz because she believed she was entitled to more money based on her worsening medical condition.  See Id. at 10-11 and Ex. B (Middleton Dep.) at 45.

Beverly Rushing testified that she and the other people in the class were the named defendants in the lawsuit.  Id. at 14-15 and Ex. C (Rushing Dep.) at 13.  Thereafter, Rushing's attorney refused to permit her to answer questions regarding the identity of the defendants, or the reason they were being sued, unless she was first permitted to review the complaint.  Id. at 14-15 and Ex. C (Rushing Dep.) at 13-14.  On the issue of class representation, the following exchange occurred:

> Q.  Do you understand that this ... lawsuit has been filed as a potential class action?
>
> A.  Yes, sir.
>
> Q.  ...Are you requesting to be the class representative?
>
> A.  I have not requested to be a class representative, but whether I am or not is up to my attorney.

Id. at 15-16 and Ex. C (Rushing Dep.) at 14.  Rushing was not permitted to answer questions regarding the class she sought to represent, the facts underlying any of the claims alleged in the complaint, the reason she was suing the Schwartz Defendants, or the damages she sustained as a result of the defendant's alleged conduct.  Id. at 15-18 and Ex. C (Rushing Dep.) at 13-14, 29, 42.

Based on their deposition testimony, it appears that each Middleton Plaintiff is "simply lending her name to a suit controlled entirely by the class attorney", which renders class certification inappropriate. See Kirkpatrick, 827 F.2d at 728; 7A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE, § 1766 (2d ed. 1986) (explaining that the "inquiry into the knowledge of the representative is to ensure that the party is not simply lending his name to a suit controlled entirely by the class attorney."). Additionally, because these Plaintiffs have not shown that they possess any knowledge or understanding of the subject class action lawsuit, the Court finds they cannot fulfill the role of class representative. See, e.g., Berger, 257 F.3d at 479 (finding that the adequacy requirement of Rule 23 requires a determination regarding "the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentee[s]; Butterworth, 171 F.R.D. at 322–23 (finding that the plaintiff was not qualified to act in the capacity of class representative because she failed to demonstrate sufficient familiarity with the facts or essential issues of the case). See, also, Welling v. Alexy, 155 F.R.D. 654, 659 (N.D. Cal. 1994) (finding that class certification should be denied if it appears the representative has ceded control of the case to his attorneys); Koenig v. Benson, 117 F.R.D. 330, 337 (E.D.N.Y. 1987) (finding that the class representative was inadequate in a case in

which the representative had not read the complaint before it was filed, and his understanding of the cause of action was weak);[5] Kassover v. Computer Depot, Inc., 691 F. Supp. 1205, 1213-14 (D. Minn. 1987) (finding that a purported class representative was inadequate because "rather than competently controlling the course of the litigation, [he] contented himself to rely entirely upon his attorney's direction."   The Court found that the plaintiff's abdication of responsibility for directing the lawsuit "created an unacceptable possibility of conflict of interest."); Massengill v. Board of Educ., Antioch Cmty. High Sch., 88 F.R.D. 181, 186 (N.D. Ill. 1980) (finding that a class representative must have some minimal awareness about the class, and at least some knowledge of the essential issues of the case).   Because the Middleton Plaintiffs have failed to demonstrate any familiarity with the facts or essential elements of their case, the Court finds they have failed to establish either that they are qualified to act as class representatives or that they can adequately protect the interests of the class.   The Court likewise finds that the Middleton Plaintiffs have not demonstrated that they have the

_____

[5] Middleton testified that she reviewed her complaint approximately two or three weeks before she was deposed on May 15, 2007.  See Resp. of Arledge to Middleton Pls.' Mot. for Class Certification, Ex. B (Middleton Dep.), at 41.  The record in the Middleton Action shows the First Amended and Supplemental Class Action Complaint, by which Middleton was added as a named plaintiff, was filed on November 29, 2006.  Accordingly, the record suggests that the First Amended and Supplemental Class Action Complaint was filed before Middleton read it.

financial resources necessary to represent the proposed class and prosecute their claims.  Finally, the Middleton Plaintiffs have not presented any evidence to support a finding that the counsel they retained would provide adequate class representation.[6] Accordingly, the Court finds that the Middleton Plaintiffs have failed to demonstrate that they can "fairly and adequately protect the interests of the class" and, therefore, that their Motion for Class Certification must be denied.

As with the Middleton Plaintiffs, the Buschardt Plaintiffs have not demonstrated that they have the financial resources necessary to adequately represent the proposed class, or that the counsel they retained would provide adequate class representation. Additionally, the record shows that part of the class in the Buschardt Action is comprised of individuals who seek to hold the Schwartz Defendants liable based on the representation that was provided by these defendants in the Fen-Phen I and II Settlements. See Pls.' Consolidated Reply in Supp. of Mots. for Class

---

[6]  The only argument offered in support of the adequacy of counsel is that "Plaintiffs' attorneys are highly experienced in class action litigation and unquestionably possess the requisite skill, ability, and experience to represent this class." See, Middleton Pls.' Mot. for Class Certification, at 12.  The plaintiffs, however, have not presented any information regarding the number or the type of class actions cases previously prosecuted by their attorneys, the number of attorneys and support personnel that will be devoting time to these cases, or the resources available to the attorneys.  Without such information, the record does not support a finding that the plaintiffs' counsel will be able to adequately represent the proposed classes.  See, e.g., McGuire, 1997 WL 261360, at *6.

Certification, at 2 (arguing that the Schwartz Defendants are "liable to Plaintiffs and the putative class members that they represented in the Fen-Phen Settlements."). The record also shows, however, that the Schwartz Defendants did not represent the Buschardt Plaintiffs in the Fen-Phen II Settlement. <u>See</u> Resp. of Schwartz Defs. to Buschardt Pls.' Mot. for Class Certification, Ex. B (Affidavit of Richard Schwartz) at ¶ 3 (averring that the Schwartz Defendants "did not represent George Buschardt or Sharon Lee Buschardt during any phase of the underlying Fen-Phen II litigation."). As there has been no showing that the Buschardt Plaintiffs could maintain a separate cause of action against the Schwartz Defendants, the Court finds that there has been no showing that these plaintiffs have a sufficient interest in, or nexus with, the other members of the class to assure a vigorous prosecution of these claims. <u>See</u> <u>Roper v. Consurve, Inc.</u>, 578 F.2d 1106, 1112 (5th Cir. 1978). Accordingly, the Court finds that the Buschardt Plaintiffs have failed to demonstrate that they can "fairly and adequately protect the interests of the class" and, therefore, that their Motion for Class Certification must be denied.

### III.  Conclusion

The Court has found that the Middleton Plaintiffs and the Buschardt Plaintiffs have failed to establish at least two of the criteria required for class certification. First, the proposed

class definitions in the Middleton and Buschardt Actions are neither clearly nor presently ascertainable.  Second, there has been no showing that the Middleton Plaintiffs or the Buschardt Plaintiffs, in their capacities as representative parties, can fairly and adequately protect the interests of the proposed classes.  Accordingly, the Court finds that the Motions for Class Certification should be denied, and that the cases in which they were filed should be dismissed.

IT IS THEREFORE ORDERED that the Middleton Plaintiffs' Motion for Class Certification [Docket No. 125 in Civil Action No. 3:06-cv-303] is hereby denied.

IT IS FURTHER ORDERED that the Buschardt Plaintiffs' Motion for Class Certification [Docket No. 17 in Civil Action 3:07-cv-350] is hereby denied.

IT IS FURTHER ORDERED that the Clerk of Court is directed to file a copy of this Opinion and Order in both Civil Action No. 3:06-cv-303 and Civil Action No. 3:07-cv-350.

IT IS FURTHER ORDERED that Final Judgments dismissing both Civil Action No. 3:06-cv-303 and Civil Action No. 3:07-cv-350, without prejudice, shall be entered this day.

SO ORDERED this the 31st day of March, 2008.


                              s/ William H. Barbour, Jr.
                              UNITED STATES DISTRICT JUDGE


31